**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:19-cv-24351-KING/JB

EUROCON, LLC, a Florida limited liability
company,

    Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY, a foreign corporation,

    Defendant.
_____/

**REPORT AND RECOMMENDATION[1] ON**
**PLAINTIFF'S MOTION TO COMPEL APPRAISAL AND STAY ACTION, ECF No. [7],**
**AND DEFENDANT'S MOTION TO ENFORCE SETTLEMENT, ECF No. [22]**

**THIS CAUSE** came before the Court on Plaintiff Eurocon, LLC's Motion to Compel Appraisal and Stay Action ("Motion to Compel Appraisal"), ECF No. [7], and Defendant Empire Indemnity Insurance Company's Motion to Enforce Settlement ("Motion to Enforce Settlement"). ECF No. [22].[2] Having reviewed the applicable filings and the relevant law, and after conducting an evidentiary hearing and oral argument on the matter, the undersigned respectfully

---

[1] The Honorable James Lawrence King, United States District Court Judge, referred Plaintiff's Motion to Compel Arbitration and Stay Action, and Defendant's Motion to Enforce Settlement to the undersigned. ECF No. [28].

[2] Defendant filed a Motion for Leave to File Corrected Motion to Enforce Settlement which sought to include in the Court record an exhibit that had been omitted from the Motion to Enforce Settlement. ECF No. [33]. That Motion is GRANTED without objection and the Court has considered the exhibit in its consideration of the Motion to Enforce Settlement.
.

**RECOMMENDS** that Plaintiff's Motion to Compel Appraisal, ECF No. [7], be **GRANTED**, and that Defendant's Motion to Enforce Settlement, ECF No. [22], be **DENIED.**

### I.     Relevant Procedural History

On November 11, 2019, Plaintiff filed a Motion to Compel Appraisal and Stay This Action Pending Completion of Same. ECF No. [7]. In that Motion, Plaintiff argued that the commercial property insurance policy ("Policy") that Defendant issued to it contains a provision that provides that either party can demand an appraisal, upon written demand, if there is a disagreement as to the value of a loss. *Id.* at 2. Here, they argued that the parties' dispute is solely as to the amount of the loss, and therefore, the matter should be stayed, and appraisal should be compelled. *Id.*

On February 24, 2020, the District Court issued an Order granting Plaintiff's Motion to Compel Appraisal. ECF No. [18]. The District Court held that appraisal was warranted because the parties agreed to appraisal under the terms of the policy and, given that Defendant had not filed a response, no argument that the parties did not agree to appraisal had been presented. ECF No. [18]. Defendant filed a Motion for Relief from the Order Compelling Appraisal and Staying Case. ECF No. [19]. Defendant requested relief due to excusable neglect by its counsel and requested an extension of time to respond to Plaintiff's Motion to Compel Appraisal and Stay the Action. *Id.* The District Court granted Defendant's Motion for Relief. ECF No. [20].

Thereafter, Defendant filed its Response to Plaintiff's Motion to Compel Appraisal. ECF No. [21]. Defendant advanced three arguments in opposition to the appraisal: (1) that the request for appraisal was premature; (2) that the parties had reached a settlement of the matter; and (3) that Plaintiff had waived the right to appraisal. *Id.* at 1–2. Plaintiff filed its Reply which argued that

appraisal was not premature, that no settlement had ever been reached and that it had not waived appraisal. ECF No. [23] at 5–6. As such, the Motion to Compel Appraisal is ripe for review.

On March 12, 2020, Defendant filed a Motion to Enforce Settlement. ECF No. [22]. The settlement they sought to enforce was the one referenced in its Response to Plaintiff's Motion to Compel Appraisal. Plaintiff filed a Response to Defendant's Motion to Enforce Settlement that disputed Defendant's allegation that a settlement had been reached. ECF No. [24]. Defendant filed its Reply, ECF No. [26], and as such, the Motion to Enforce Settlement is also ripe for review.

## II. Plaintiff's Motion to Compel Appraisal Should Be Granted.

Under Florida law, "[i]t is undisputed that the issue of coverage is one for the court, while the issue of the amount of loss is one for appraisers." *People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231, 234 (Fla. 3d DCA 2019) (citations omitted). "If an insurer admits that there is a covered loss, the amount of which is disputed, the amount of loss question is for an appraisal panel." *Almeria Park Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 18-20609-civ, 2019 WL 1959200, at *4 (S.D. Fla. Jan. 16, 2019) (quoting *767 Bldg., LLC v. Allstate Ins. Co.*, No. 10-60007-civ, 2010 WL 1796564, at *2 (S.D. Fla. May 4, 2010)). Defendant advance three arguments in opposition to having the matter stayed so as to proceed to appraisal. The Court will take each in turn.

### A. The Appraisal Is Not Premature.

Defendant argues that Plaintiff's pre-suit demands for appraisal were premature. ECF No. [21] at 10–11. Although Defendant advanced arguments as to why earlier demands for arbitration were premature, the issue now is whether the instant request is premature. Defendant did not advance, in its Response, any post-loss conditions that would defeat the request for appraisal. Moreover, during a hearing before the undersigned on July 17, 2020, Defendant's counsel clarified that the only argument that they were advancing as to whether appraisal is timely is the argument

3

that the parties have settled the matter and therefore appraisal is not appropriate. Based on that representation, and the undersigned's own review of the argument posed in their Response, the request for appraisal is not premature.

### A. There Is No Enforceable Settlement Agreement Between the Parties.

Defendant argues that the parties already settled the case, while Plaintiff disputes that an agreement was ever reached. ECF Nos. [23], [24]. A motion to enforce a settlement agreement is an action governed by state contract law. *See Blum v. Morgan Guar. Trust Co.,* 709 F.2d 1463, 1467 (11th Cir. 1983). To prove the existence of a contract the party alleging an agreement must show the presence of: (1) offer; (2) acceptance; (3) consideration; and (4) specificity of terms. *See Kolodziej v. Mason,* 774 F.3d 736, 740 (11th Cir. 2014). Under Florida law, an objective test is used to determine if the parties formed a valid contract—whether a reasonable person would have believed that the parties intended to form a contract when the offer was made. *See Robbie v. Miami,* 469 So. 2d 1384, 1385 (Fla. May 23, 1985). The undersigned has considered the arguments of the parties, as well as the testimony and exhibits entered into evidence during the evidentiary hearing on the matter. Given the standard imposed by Florida law, the undersigned finds that a reasonable person would not believe that these parties entered into a settlement.

Defendant contends that Plaintiff made an offer to settle on January 14, 2019. ECF No. [22] at 1. Specifically, Defendant argues that Daniel Masso ("Masso"), Eurocon's public adjuster, sent an e-mail to Defendant's representative, Michael Mastilak ("Mastilak") that stated:

After reviewing the Eurocon file I found the following:

1. $557,484.00 Depreciation hold back
2. $300,000.00 ----- $600,000.00 possible exposure on BI [business interruption]
3. $5,154,702.19 difference on the estimate that was original presented and Zurich

> We originally discussed the client was looking for a net payment in the area of 3.5, I think if you can Distribute the hold back something on BI you have some room with a 5.2 difference on damages.
>
> I will offer release from our client on this claim. We need to get rid of this one Sir.
>
> I'll await your response.

ECF No. [22-1]. This e-mail, Defendant contends, was either an offer to settle, ECF No. [22] at 3–4, or as counsel argued at the hearing, was evidence that a more specific offer and later settlement was later reached between the two men as representatives of the two parties. In the Response and at the Hearing, Plaintiff argued that no valid offer was made in the January 14, 2019 e-mail from Masso to Mastilak. ECF No. [24] at 2. Plaintiff argued that the alleged price term, "in the area of 3.5," was too ambiguous to form a valid offer to settle. *Id.* at 4. Additionally, Plaintiff argued that the alleged offer for "a full release from our client on this claim" is not an offer to settle but mere optimism to enter a future settlement. *Id.* at 5.

At the hearing, Mastilak testified that he worked for the insurance industry for roughly forty years and was preparing to retire on February 1, 2019, when he received the e-mail from Masso. ECF No. [43] at 8–9. He testified that he understood the above referenced e-mail was an offer to settle the matter for a total of $3.5 million (Defendant had already made previous payments on the claim), and not that Defendant would have to pay an additional $3.5 million to settle the matter. *Id.* at 18–19. Mastilak testified that after he received the above referenced e-mail he had a telephone call with Masso where the case was discussed and that on that telephone call they agreed to settle the claim for a total of $3.3 million. *Id.* at 19. Masso could not recall the date of the telephone conversation and provided the Court no information about that telephone call. *Id.* In an affidavit provided to the Court before the hearing, Mastilak did not mention the telephone call with Masso, and instead, merely averred that a settlement was reached between the parties. ECF No. [33] at

5

Exh. 1.  Indeed, the only testimony with respect to how the settlement was reached was provided at the hearing during the following exchange with Defendant's counsel:

> Q. And after this email on or around January 14th, did you have any discussions with Mr. Masso about resolving the claim?
>
> A. I -- possibly. I don't recall. I -- from this email, and from discussions with Danny, I assumed that if we can get somewhere in the vicinity of 3.5 million, we would be able to settle the entire loss.
>
> Q. Did you discuss a potential resolution of this claim with Mr. Masso on the phone?
>
> A. Yes.
>
> Q. And did you discuss a potential resolution on the phone with Mr. Masso after this email?
>
> A. Yes.
>
> Q. And do you recall the specific date on which you phoned him?
>
> A. No, I don't.

*Id.*  Counsel for Defendant did not ask Masso any questions about this telephone call, and Masso, during his testimony, disputed that a settlement had ever been reached.  *Id*. at 79–80.

On January 28, 2019, Mastilak, based on his understanding that he had reached a settlement with Masso, sent Masso the following e-mail:

> The intent of this e-mail is to inform you that Empire Indemnity Insurance Company is issuing the balance due of the agreed loss measure in the amount of $1,023,752.12
>
> We have provided a spreadsheet outlining the final payment
>
> As before, the payment will be issued as follows:
>
> *Eurocon LLC; Doral Hotel Enterprises LLC; DBA Aloft Miami Doral; DBA Miami Hotel Enterprises LLC; Element Miami Doral Hotel and Banesco USA and Century Adjusting, Inc.*
>
> As with the previous payment, the payment will be sent as follows:
>
> Danny Masso
> Century Adjusting, Inc.
> 8100SW 81st Dr. St 230

6

      Miami
      FL 33143

      This payment will be sent via FedEx overnight mail.

ECF No. [22-1] at 2. There is no dispute that the payment of $1,023,752.12 was received and deposited by Plaintiff. Indeed, this amount, together with other payments and the deductible, resulted in a settlement that totaled $3.3 million. ECF No. [43] at 24.

      At the hearing, Masso testified that he never responded to the January 28th e-mail he received from Mastilak because he knew that Mastilak was retiring a few days later and so was not likely to receive his e-mail. *Id*. at 78–79. As to the payment made by Defendant, he testified that because there had been previous payments on the loss he believed it was an additional payment that was being made before the parties proceeded to appraisal. *Id*. Indeed, he testified that in his experience such a dispute would not be settled without a signed release, and, as such, he did not understand the e-mail or the payment to be a settlement of any kind. *Id*. at 76, 78. In support of that position, Plaintiff argues that the exhibits and the testimony of the witnesses at the hearing presented a timeline that after two previous demands for appraisal, Defendant later made an additional payment. *Id.* at 78. In short, Masso testified that he never believed a settlement had been reached and did not understand that the final payment made was intended to be a settlement of the claim. *Id.* at 78–79.

      In support of their argument, Defendant also relies on internal memoranda as evidence that the parties reached a valid settlement agreement. ECF No. [22] at 2. Defendant proposes that the internal documents support Mastilak's testimony that he believed they had reached a settlement. Finally, Defendant also argues that because Plaintiff deposited the payment, Plaintiff accepted the settlement. *Id.*

The undersigned concludes that the parties did not reach a settlement agreement. First, the language in the e-mails that Defendant proposes formed the offer and acceptance are too ambiguous to have constituted a settlement. Specifically, the purported "offer" was the January 14, 2019 e-mail from Mastilak on behalf of Plaintiff. The language of that e-mail, however, was too ambiguous to satisfy the objective test required by Florida law. Indeed, the e-mail did not contain the amount, but instead it proposed a payment "*in the area of* 3.5." ECF No. [22] (emphasis added). Given that no specific amount to settle was proposed, the undersigned cannot find that the e-mail constitutes an unambiguous offer.[3]

Second, Defendant's e-mail from January 28, 2019 does not unambiguously offer payment in exchange for release of the claim. Acceptance of payment is only sufficient to prove acceptance of a settlement if that payment is expressly conditioned on being complete satisfaction of the disputed claim. *See J.B.D., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014). Here, Defendant's e-mail does not constitute an offer because it does not unambiguously offer payment in exchange for release of the claim. Without express conditions in the alleged offer, Plaintiff could have reasonably believed, as they did, that the payment was a partial payment and not a final payment made in exchange for release of the claim. Thus, the second e-mail dated January 28, 2019 is also too ambiguous to constitute a valid offer.

Third, the internal memoranda relied on by Defendant only provides evidence of the subjective opinion of Defendant and not evidence of a settlement agreement reached between the parties. ECF No. [22]. Under the objective standard of contract formation, one does not look into

---

[3] Additionally, the statement in the e-mail that "I will offer a full release from our client on this claim" could be reasonably interpreted as mere optimism for a future offer and not an unambiguous offer to settle the claim. *Id.* at 5. *See E Qualcom, Corp. v. Glob. Commerce Ctr Ass'n, Inc.*, 189 So. 3d 850 (Fla. 4th DCA 2015) (holding that mere desire to reach a future settlement is not sufficient to show that a settlement has been reached).

the subjective minds of the parties. *See Kolodziej,* 774 F.3d at 745. Here, the internal memoranda provided no objective evidence that both parties created a contractual obligation to settle the claim. In short, the memoranda, at best, show that Mastilak may have believed the parties agreed to settle the claim, but is insufficient to show that a reasonable person, the standard here, would have reached the same conclusion.

Fourth, although the Court finds that Mr. Mastilak was a credible witness, his testimony does not support a finding that a settlement was reached. Mastilak was wrapping up his career and was about to retire just days before these e-mails were exchanged. Perhaps he did believe that they had settled, but, in the likely rush of wrapping up before he was to retire, his understanding was incorrect. As noted above, the e-mails do not support a finding that a settlement was reached, and the testimony at the hearing also fails to support the conclusion.

Indeed, Defendant's argument that the matter was settled by telephone at some point between the two e-mails is not supported by the evidence. Mastilak's own testimony as to the telephone call where Defendant claimed that the matter was settled was vague and failed to include any details about the telephone call. Indeed, Defendant's counsel did not elicit a single fact about that telephone conversation. Mastilak might have thought the claim was settled, but there is no evidence, based on an objective standard, to support such a conclusion. Instead, the undersigned credits Masso's testimony that the payment was not a final settlement but rather an additional payment on the claim. Indeed, the documents presented at the hearing show that there were multiple payments on other occasions similar to this, which supports a finding that a settlement was not reached.

Fifth, the January 28, 2019 e-mail that Defendant argues confirmed the settlement noted that Defendant was paying the "agreed loss measure." ECF No. [22]. Defendant argues that this

9

term should have put Plaintiff on notice that the amount that was being paid was a settlement, or, in any event, was evidence that some agreement between the parties was reached. *Id.* The undersigned cannot reach that same conclusion. Prior payments, as evidenced in the exhibits (Exhibits 3, 6) presented at the hearing, showed terms such as "undisputed loss measure" were also used by Defendant on previous occasions when other payments on the claim were made. ECF No. [24] at 10–15. The term itself, agreed loss measure, cannot be said, on this record, to be clear terminology that should have at the very least put Plaintiff on notice that Defendant believed that a settlement had been reached.

Finally, Defendant's argument that a settlement was reached because Plaintiff could only have interpreted that last payment as a final and full settlement of the claim is unavailing. Plaintiff responded that its representatives believed that the payment was merely an additional, partial payment and not a final payment to settle the claim because the payment was not only significantly less than the disputed amount, but Defendant had made other such payments consistent with this "final" payment. The undersigned's review of the e-mails and payments that had been made finds Plaintiff's response credible. Morever, Plaintiff correctly argued that acceptance of the payment does not constitute acceptance of an offer to release the claim because the payment was not expressly conditioned as such. *Id*. at 6; *See Heuser v. Sunbelt Enters.*, 537 So. 2d 1071 (Fla. 1st DCA 1989). Indeed, the payment was not sent with a release or any other indicia that the matter was being settled. Moreover, as Plaintiff argued at the hearing, the amount at issue was still quite large and the discrepancy between what Plaintiff believed was the loss and the payments was so large that Plaintiff could not have assumed that the last payment was actually a full and final settlement. As such, the receipt and deposit of the payment did not constitute a settlement.

In conclusion, the undersigned finds that no reasonable person would conclude, based on the actions of these parties, that a settlement had been reached.  The e-mails do not show that an offer was made and accepted, and the evidence does not support the conclusion that a settlement was agreed to orally by the parties.

### B.  The Right to Appraisal Has Not Been Waived.

Finally, Defendant contends that Plaintiff's conduct constitutes a waiver of its right to seek appraisal.  ECF No. [21] at 12–13.  Under Florida law, a party seeking to establish waiver must show: "(1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right."  *Z Indus. USA, LLC v. Circuitronix, LLC*, No. 0:17-cv-60727, 2018 WL 3412854, at *14 n.8 (S.D. Fla. June 20, 2018) (citing *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009)).  Because nothing in the record suggests that Plaintiff expressly or impliedly intended to relinquish its right to compel appraisal, Defendant has failed to establish the third element of its waiver defense.

To the extent that Defendant argues Plaintiff's subsequent conduct is inconsistent with Plaintiff's right to compel appraisal, it is clear from the record that Plaintiff's pre-suit demands for appraisal were of no avail and that absent a response from Defendant, Plaintiff filed suit and again demanded appraisal in its Petition.  Moreover, as noted above, the Court does not find that there was a settlement between the parties, and, as such, that conduct cannot be said to amount to a waiver.  Therefore, the Court finds that Plaintiff has not waived appraisal because it has maintained a position consistent with the appraisal remedy.  *People's Tr. Ins. Co. v. Vidal*, 45 Fla. L. Weekly D1149 (Fla. 3d DCA May 13, 2020) ("[G]enerally, a party will not be deemed to have waived appraisal unless the party's litigation position is inconsistent with the party's assertion of the right to appraisal."); *see also Citizens Prop. Ins. Corp. v. Admiralty House, Inc.*, 66 So. 3d 342, 344–45

11

(Fla. 2d DCA 2011) (holding that the insured did not waive its right to appraisal where the insured made a pre-suit demand for appraisal and included as part of its complaint a declaratory action to determine its right to appraisal).

## I. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion to Compel Appraisal, ECF No. [7], should be **GRANTED**, and Defendant's Motion to Enforce Settlement, ECF No. [22], be **DENIED**.

## II. OBJECTIONS

Pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Any request for an extension of this deadline must be made within five (5) calendar days from the date of this Order. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report and Recommendation to which the parties failed to object. 28 U.S.C. § 636(b)(1); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at the James Lawrence King Federal Justice Building, Miami, Florida, this 25th day of September, 2020.

_____
**JACQUELINE BECERRA**
**United State Magistrate Judge**